COLER v. AMERICAN SOCIETY FOR PREVENTION OF CRUELTY TO ANIMALS.

(Supreme Court, Special Term, Kings County.  October 15, 1908.)

INJUNCTION (§ 136*)—PRELIMINARY INJUNCTION—RIGHT.

While ordinarily the Special Term will hesitate to grant a preliminary injunction solely on the ground that a statute is unconstitutional, it will be granted where delay until trial would render it unavailable, if the party seeking it were found to be entitled to such relief, so that in an action to restrain defendant from killing a dog, which it had impounded and threatened to kill, because not licensed, on the ground that the statute under which defendant acted was unconstitutional, a preliminary injunc-

tion will be granted until the formal adjudication of the constitutional question, unless plaintiff's contention is entirely without merit, and he will not be compelled to pay the license required so as to prevent the dog from being killed before trial, in order to obviate the granting of the injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 305–306; Dec. Dig. § 136.*]

Suit by Bird S. Coler against the American Society for the Prevention of Cruelty to Animals. On motion to continue a temporary injunction pending trial. Motion granted.

Edward J. Reilly, for plaintiff.

Elliott, Jones & Fanning, John L. Cadwalader, George F. Elliott, and William N. Dykman, for defendant.

KELLY, J. The plaintiff moves for an order continuing a preliminary injunction granted ex parte, restraining the defendant from detaining, destroying, or interfering with a dog belonging to plaintiff which was seized by defendant's agents on May 4, 1908. It appears that on the day in question the dog was found by one of the defendant's employés, in the street without a license tag attached to the animal's collar. The dog was taken to the "shelter" maintained by the defendant in the borough of Brooklyn and, in accordance with the provisions of chapter 115, Laws 1894, as amended by Laws 1895, c. 412, and Laws 1902, c. 495, §§ 5, 8, the defendant refuses to surrender him to the plaintiff and intends to kill the animal, unless the owner pays to the defendant the sum of $3 and procures a license by paying the defendant the further sum of $2, as provided in section 1 of the act in question. Upon payment of a license fee of $2, the defendant is empowered by the act in question to issue a license for the dog, which license shall be good until the succeeding month of May, when it may be renewed by the payment to the defendant of the additional sum of $1. When one of these licenses is granted for a dog under the terms of the act, the defendant is required to issue, with the license or certificate, a metal tag containing the number of the license, and it is provided that every dog shall have a collar about its neck with the tag attached. In case a tag is lost, the owner of the dog may procure a duplicate tag by paying the defendant the further sum of $1. A dog licensed by defendant and equipped with the defendant's tag may roam the streets at will; a dog not licensed and tagged is subject to seizure by defendant's agents and destruction, provided the owner fails or refuses to comply with the act and pay the fees referred to. The plaintiff's dog having been taken by the defendant, and the plaintiff refusing to pay the fees provided in the act, the defendant was about to kill the animal, when this action was commenced and a temporary injunction issued. The plaintiff claims that defendant's action is unlawful, and that the statute in question is unconstitutional.

Ordinarily the court at Special Term hesitates to grant an injunction in advance of trial based on the sole ground that an act of the Legislature is unconstitutional. Respect for the co-ordinate branch of gov-

ernment properly necessitates a full hearing and trial before procedure under an act of the Legislature is enjoined, and yet the duty of the court to issue a preliminary injunction is unquestionable when the delay until the trial will render the injunction nugatory in case it be decided that plaintiff is right in his contention. In this case, it will benefit the plaintiff to obtain a decree that the act is unconstitutional after trial, when a delay of five days will result in the killing of the dog. And so, unless the plaintiff's contention is clearly without merit, I think, under the elementary rules governing preliminary injunctions, he is entitled to his day in court and a trial and formal adjudication upon the issue which he tenders before the defendant should be allowed to destroy the dog.

It is said that he may pay the money demanded by defendant and secure the return of the dog, litigating the question afterwards; but, where a citizen comes before the court protesting that his constitutional right to protection to his property is invaded, I do not think he should be compelled to pay money to maintain his status. Unlawful interference with person or property is not measured by the money involved, and there appears to be something wrong in the argument that one claiming his person or property is unlawfully restrained should be obliged to pay any sum, no matter how small, to the alleged wrongdoer, to enable him to obtain a hearing before the court. I have delayed decision on this motion in deference to the suggestion of the learned counsel for defendant, that the continuation of the injunction would in some way interfere with the work of defendant in destroying mad dogs during the summer months, and because of the assertion that the inhabitants of the city of New York have no protection from mad dogs except through defendant and its agents. While I do not agree with counsel, I recognize the great work the defendant has done in the past and is now doing for the protection of dumb animals, and the vast difference in their care and treatment since the advent of these societies. That they have accomplished great good and performed a most laudable work is undeniable. But in this matter of dog licenses, I have grave doubt whether the defendant's action is lawful.

The act in question is based on the police power of the state for the protection of the citizens from hydrophobia. This dreadful disease is brought about, as I understand it, almost altogether from the bite of an animal affected with rabies, or, in common parlance, a mad dog. By destroying homeless wandering dogs, the Legislature in effect declares that the danger to the public is lessened, and this act is intended to carry out that purpose. Granted that the object is reasonable, I do not see the magic in the defendant's license and tag. The plaintiff's dog apparently is neither homeless nor wandering, within the intent of the Legislature. He is said to be a valuable animal. He was equipped with a collar. His owner was known. He was in the street in front of plaintiff's house. The danger to the public would appear to be as great from a dog duly licensed and tagged as from plaintiff's dog, and yet any number of dogs might roam the streets far away from their owners and uncontrolled, and for that matter without owners, and yet defendant's tag renders them immune from seizure. I do not see how the object intended by the Legislature is accomplished by the tag.

If muzzles or a leash were required, it would appear to be a more effective method of protecting the public. If a dog bites, the fact that he is tagged or not tagged does not appear to be important. A dog tagged and roaming the streets may become infected as well as a dog having an owner and a home, but unlicensed.

But if it be said that these matters are within the domain of the Legislature, I still think there is grave doubt whether the amendments to the statute cited have removed all of the objections referred to by the Court of Appeals in Fox v. Mohawk & Hudson River Humane Society, 165 N. Y. 517, 59 N. E. 353, 51 L. R. A. 681, 80 Am. St. Rep. 767. In that case a similar statute was declared unconstitutional for various reasons referred to in the opinion of Judge Cullen writing for the court. The statute was thereupon amended, with the purpose of avoiding the unconstitutional provisions commented on by the court. I have read with interest and with great respect the opinion of former Chief Judge Andrews given to the defendant, in which he holds that the act in its present form obviates the objection sustained in the Fox Case, and undoubtedly this has been done as to most of these objections. But there remains one objection to the act in question pointed out by Judge Cullen at page 524 of 165 N. Y., at page 353 of 59 N. E. (51 L. R. A. 681, 80 Am. St. Rep. 767) which I think remains. I suggested it on the argument, and I cannot see that it is disposed of. I do not believe that the Legislature can vest any such power as is sought to be conferred here in a private corporation. The agents who go into the streets of the city and seize these animals are not public officers. They are selected by the defendant and responsible to it. They have power to take these dogs by force from the owners and deliver them to the defendant. It is a misdemeanor to interfere with these persons. They are described in the act as officers and agents of the society. They are vested with powers greater, in some respects, than public officers bound by oath and responsible to the public. I think the public health should be protected by the state or the municipality, acting through their duly designated representatives. There can be no question as to the power of the Legislature to provide for the licensing of dogs, or for the protection of the citizens by appropriate regulations and rules governing the keeping of dogs; but great danger may result from delegating to these private corporations duties which belong to the public and which should be performed by public officers. The Legislature may delegate duties to individuals which cannot be delegated to corporations. Without questioning the good that has been done in many cases by such associations, when it comes to interference with the person or property of the individual, I doubt whether the principle is right. It seems wrong that, in this case, the plaintiff's dog should be kept from him and put to death unless he pays money to the defendant corporation, which, as far as I can see, is not subject to report to the state or municipality, or to control in its work by any branch of government. I think these questions should be deliberately tried out and decided before the plaintiff's dog is killed.

The motion to continue the injunction pending the trial is therefore granted.