Ilan S. Schoenberger, Esq. County Attorney, Rockland
I am writing in response to your request for an Attorney General's opinion interpreting recent legislation (L 1986, chs 669, 670) which amended various provisions of the Public Authorities and Tax Laws and which permits the counties of Dutchess, Orange and Rockland to withdraw from the Metropolitan Commuter Transportation District.
By way of background, prior to the enactment of chapters 669 and 670 the Metropolitan Commuter Transportation District consisted of the City of New York and the counties of Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk and Westchester (Public Authorities Law, § 1262).* The Metropolitan Transportation Authority (MTA) provides mass transportation services to these areas and in return receives a percentage of the sales and use taxes and the mortgage recording taxes collected in these counties (id., § 1263; Tax Law, §§ 261, 1210).
Chapters 669 and 670 were enacted in order to address perceived inequities in the MTA. As noted in the Governor's approval memorandum:
 "Elected officials and residents of these counties have said that they believe that there are inequities associated with the levels of transit service and the amount of taxes paid for this service. A recent study by the Metropolitan Transportation Authority (MTA) indicated that these outlying counties in the district received relatively less service for their dedicated tax contributions than the other counties in the district. Since some of the benefits of transit service cannot be quantified, these bills will enable each county to evaluate its own situation and determine whether it is more desirable to remain in the district or provide its own service" (Governor's approval memorandum, July 26, 1986, Legislative Bill Jacket, L 1986, chs 669, 670).
Chapter 669 adds section 1279-b to the Public Authorities Law. This new section provides the counties of Dutchess, Orange and Rockland with the option to withdraw from the Metropolitan Commuter Transportation District at specific times during 1987, 1988 and 1989. The legislation also specifies the conditions under which a county may withdraw, determines the rights and obligations of all concerned parties upon withdrawal and adjusts the structure of the MTA and related entities in the event of a withdrawal (see, July 28, 1986 letter from NYS Department of Taxation and Finance, Legislative Bill Jacket, L 1986, chs 669, 670).
In addition, chapter 669 provides for the reallocation of the sales, use and additional mortgage recording taxes normally payable to the MTA. Under section 1210 of the Tax Law, counties are authorized to impose a sales and use tax at one-half percent increments up to three percent (section 1210 also permits certain counties and cities to impose higher rates).* Section 1109 of the Tax Law imposes an additional one-quarter percent sales tax, above and beyond the tax rate set pursuant to section 1210, in the counties within the Metropolitan Commuter Transportation District (Tax Law, § 1109[a]; see, Heimbach vState, 59 N.Y.2d 891, app dsmd 464 U.S. 956[1983]). The revenues from this additional tax are forwarded by the Comptroller to the mass transportation operating assistance fund (Tax Law, § 1109[d][2]; see, Public Finance Law, § 88-a).
With regard to the amount of sales tax which can be imposed by the county following its withdrawal from the District, section 1210 of the Tax Law was amended by chapter 669 to provide as follows:
 "if the county of Dutchess, the county of Orange or the county of Rockland withdraws from the metropolitan commuter transportation district pursuant to section twelve hundred seventy-nine-b of the public authorities law, such county is hereby authorized and empowered, in the alternative, to adopt and amend local laws, ordinances or resolutions imposing such taxes at the rate of one-half, three-quarters, one, one and one and one-quarter, one and one-half, one and three-quarters, two, two and one-quarter, two and one-half, two and three-quarters, three or three and one-quarter percent if the revenues from a one-quarter percent rate of such tax are required by such local laws, ordinances or resolutions to be set aside for mass transportation purposes, such taxes to be administered, collected and distributed by the state tax commission as provided in subpart B of part III and in part IV of this article" (Tax Law, § 1210).
In answer to your question as to whether a withdrawing county may impose a sales tax of one-quarter of one percent, the statute does not permit a sales tax in that amount. The amendment authorizes a sales tax rate ranging from one-half of one percent to three and one-quarter percent, in one-quarter percent intervals. Furthermore, this alternate tax can be imposed by a withdrawing county only if one-quarter of one percent of the revenues are dedicated for mass transportation purposes.*
You have also asked whether Rockland County must use the additional mortgage recording tax revenue under section 253 of the Tax Law for mass transportation purposes in the event the county withdraws from the District and does not suspend the imposition of the tax.
By way of background, an additional mortgage recording tax is provided for in section 253(2) of the Tax Law. Under section 261 of the Tax Law, counties which are within commuter transportation districts must pay the additional mortgage recording tax over to the transportation authority for their district (id., § 261[1][a]).
Tax Law, § 261 also provides as follows:
 "with respect to the county of Dutchess or the county of Orange or the county of Rockland if any such county withdraws from the metropolitan commuter transportation district pursuant to section twelve hundred seventy-nine-b of the public authorities law and does not suspend the imposition of such additional tax [tax revenues are to be paid] to the county treasurer of such county if such county provides that the moneys shall be used for mass transportation purposes but, if any such county which so withdraws and which does not so suspend does not so provide, to the comptroller pursuant to clause (g) of this paragraph . . ." (Tax Law, § 261[1][f]).
This section provides a county withdrawing from the district with the option of suspending imposition of the additional tax. If the county does not choose to suspend imposition of the tax, it can use the moneys for mass transportation purposes, or it can pay them to the State Comptroller (ibid.). A review of chapter 669's legislative history makes it clear that the intentions of the drafters was to allow counties withdrawing from the district to retain the extra revenue-producing mechanisms of the sales and use tax and the additional mortgage recording tax only in the event these extra revenues were to be used for mass transportation purposes. If the withdrawing county allows the tax to continue, the county may require that the (mortgage recording) revenues be dedicated to the implementation of its public transportation plan. If not so dedicated, the revenue would be utilized in the same way as in other counties which are outside New York City or are not part of a transportation district (July 28, 1986 letter from NYS Department of Taxation and Finance, Legislative Bill Jacket, L 1986 chs 669, 670).
Finally, you have asked whether the term "mass transportation purposes", as used in chapter 669 includes various proposed expenditures, e.g., improvement of bus or railroad facilities; purchase of bus or railroad capital improvements; and expenditures for the improvement of roads and bridges which are used by such buses.
A definition of "mass transportation purpose" is not found in chapter 669 or elsewhere in the Public Authorities Law. "Transportation facilities" are defined in the Public Authorities Law and this term may provide some general guidance:
 "`Transportation facility' shall mean any railroad, omnibus, marine or aviation facility and any person, firm, partnership, association or corporation which owns, leases or operates any such facility or any other facility used for service in the transportation of passengers, United States mail or personal property as a common carrier for hire and any portion thereof and the rights, leaseholds or other interest therein together with routes, tracks, extensions, connections, parking lots, garages, warehouses, yards, storage yards, maintenance and repair shops, terminals, stations and other related facilities thereof, the devices, appurtenances, and equipment thereof and power plants and other instrumentalities used or useful therefor or in connection therewith" (Public Authorities Law, § 1261[14] [see also, § 1261[8], [9] for definition of omnibus and railroad facilities]).
For your information, several cases have addressed the issue of whether a particular expenditure serves a mass transportation purpose (see, NYSSchool Bus Operators Ass'n. v Nassau County, 79 Misc.2d 352 [Sup Ct, Nassau Co, 1974], mod on other grnds 48 A.D.2d 671 [2d Dept, 1975], affd39 N.Y.2d 638 [1976]; Metropolitan Transp. Authority v Village ofTuckahoe, 67 Misc.2d 895, [Sup Ct, Westchester Co, 1971], affd38 A.D.2d 570 [2d Dept, 1971]; Altro v Conrail, 129 Misc.2d 1061 [Sup Ct, App Term, 2d Dept, 1985]). The ultimate determination of whether a particular proposed expenditure serves a mass transportation purpose, however, is essentially a question of fact and beyond the scope of this opinion.
We conclude that a county withdrawing from the Metropolitan Commuter Transportation District under section 1279-b of the Public Authorities Law may retain the proceeds of the additional mortgage recording tax under Tax Law, § 253 and the sales and use tax revenues under the alternate provisions of Tax Law, § 1210 only in the event revenues from these taxes are applied for mass transportation purposes.
* Section 1262 now provides that "the district shall not include a county that has withdrawn from the district pursuant to section twelve hundred seventy-nine-b of this article".
* Section 1210 provides:
 "any city in this state or county in this state, except a county wholly within a city, acting through its local legislative body, is hereby authorized and empowered to adopt and amend local laws, ordinances or resolutions imposing in any such city or county the following taxes, at the rate of one-half, one, one and one-half, two, two and one-half or three percent . . .".
* In the event a county withdraws from the district and does not dedicate one-quarter percent of the revenues to mass transportation purposes, under section 1210 the county may impose sales tax "at the rate of one-half, one, one and one-half, two, two and one-half or three percent".